## Case No. 9,214.

### The MARY JANE.

[Blatchf. Pr. Cas. 363.] [1]

District Court, S. D. New York. May, 1863.

PRIZE—VIOLATION OF BLOCKADE — FALSE PAPERS —ADDITIONAL PROOFS—REHEARING.

1. Vessel and cargo condemned for an attempt to violate the blockade.

2. False papers as to the voyage of the vessel.

3. A rehearing on further proofs denied to the claimant.

In admiralty.

BETTS, District Judge. The libel of information charges that the above vessel and cargo were captured, as lawful prize of war, March 24, 1863, on the Atlantic Ocean, off New Inlet, North Carolina, by the United States steamer Mount Vernon, and sent into this port for adjudication. The libel was filed April 3d, and process of attachment, and a monition thereon, were on the same day issued, and were returned in court on the 21st of the same month. On the 28th of April, 1863, separate parties intervened as owners of the vessel and cargo, and filed, by the same proctor, distinct claims and answers to

[1] [Reported by Samuel H. Blatchford, Esq.]

the libel, each denying that the vessel and cargo are prize of war, and each also giving detailed allegations and statements, as by way of special plea, substantially with common averments. Proofs were taken in preparatorio before the prize commissioners on the 8th and 9th of April, 1863, and the case was submitted to the court for decision, on written briefs and points, by the counsel for the respective parties, on the 28th of May thereafter.

The vessel and cargo having been captured by a blockading vessel, near the land, and on a course to the blockaded port, the claimants are called upon to justify her position under the circumstances. The defence is attempted to be maintained upon the documentary proofs found on the vessel, and the testimony of the witnesses examined in preparatorio, and the fitting reply to that defence is supplied by the same testimony. The vessel was of British build and ownership, as shown by a certificate of British registry to William A. Fraser, of Pictou, N. S., dated at Halifax, January 24, 1863. The only other papers produced from the prize, on her seizure, are the shipping agreement between W. A. Fraser, named as master, and five men, dated at Halifax, January 26 and 27, 1863, for a voyage to ports in the West Indies, and back to the port of Halifax, term of time not to exceed six months; a note, indorsed thereon, of the arrival of the agreement at Turk's Island, February 25, 1863, and its deposit there, February 28; a letter of instructions, from Thomas S. Reid to Captain Fraser, of the schooner Mary Jane, dated Halifax, January 23, 1863, directing the master to proceed with his cargo to Turk's Island, as by charter party of that day, and there trade off or sell the goods shipped on the vessel, and purchase therewith a cargo of salt, and sail with the same for Halifax, any balance, after paying for the salt, to be remitted to the shipper; a clearance at the port of Nassau, for Halifax, given March 9, 1863, for 8 barrels of flour, 9 barrels of pork, 1 bucket of butter, 5 boxes of soap, 12 boxes of fancy soap, and 1,268 bushels of salt; and a custom-house certificate, dated at Turk's Island, February 28, 1863, that Captain Fraser, of the British schooner Mary Jane, having on board the above mentioned cargo, (except the salt,) had entered the same at that port, and had also cleared the same there for Nassau, with the addition of the before-mentioned quantity of salt. Fraser, the master, testifies that the vessel and cargo were captured March 24, last, in five fathoms of water, between six and seven miles north of Fort Caswell, Wilmington, N. C., and fully a mile off from land; that he owned the vessel; that she was of about 50 tons burden; that Reid, of Halifax, owned the cargo; that the vessel was sailed under a charter-party; that the vessel had bills of lading of her cargo on board when captured, all of which was taken by the captors; that he knew that Little River

Inlet and the southern coast was under blockade, before he left Halifax; and that the vessel had suffered the loss of water in a storm, and was seeking the blockading squadron for relief when captured. Brown, the mate, testifies that the vessel was captured about four miles off from Wilmington; that she was bound to Halifax; that he understood she was going, when captured, to the blockading vessels to get water; that there was no charter-party signed; that he knew that the ports along the southern coast were blockaded; and that the vessel did not alter her course on seeing the blockading squadron. Power, a passenger, says that no guns were fired on the capture, except on a fort from shore; that he supposed that the vessel was bound from Nassau to Halifax; that, when she was chased by the blockading vessels, she was keeping along the land; that she then altered her course, so as to bear up towards the pursuing ships; and that he does not know whether her course was at all times towards Halifax.

This recapitulation of the occurrences of the voyage, and of the statement of the three witnesses examined, leaves, it appears to me, but one conclusion to be reasonably deduced from the facts. This small British craft started from Halifax on a trading voyage, purporting to be from her home port to Turk's Island and back to Halifax, with the instruction to dispose of her outward cargo at Turk's Island, and, out of the proceeds, purchase a cargo of salt, and bring the same back to Halifax, the balance of the proceeds, after paying for the salt purchased at Turk's Island, to be remitted to the shipper of the outward cargo. After making the run to Turk's Island, and performing her mission at that place, the vessel was cleared at Nassau, for her return voyage, on the 9th or 10th of March, and was captured off Wilmington, N. C., on the 24th of the same month, by the United States ship-of-war before named, which was guarding the blockade of that port. No log-book or other document furnishes further evidence than her clearance does of the day of her departure from Nassau, or of the course she was to pursue thence. It is to be intended that the passage was made under no circumstances of extraordinary detention or delay, and was most probably effected with all the expedition of a direct voyage. It appears, from the examination of the witnesses on board, that the vessel was discovered on the morning of the 24th of March by the capturing ship, and was immediately chased by her, when found crawling along close to the shore, bearing in towards the land, within about a mile of the fort off Wilmington, and was there captured, whilst the guns of the fort were brought to bear against the United States ship, in an attempt to cover and defend the prize with the enemy's fire. The prize was found to be laden with provisions and soap, and chiefly with commodities of the first importance to

the enemy at the port she was about entering, and to the enemy in that whole section of country. She carried no letter of instruction, no invoice or bill of lading, no manifest of her cargo, and no documents in relation to the cargo or voyage, other than her clearance at Nassau. She was, as before stated, proceeding without any log-book or other memorandum of her time of departure, her destination, or the course of her route; and the only evidence given to the court, in respect to her position, is in the statement made by the master, on his examination in preparatorio, that she encountered a violent gale, after leaving Nassau, in which her water casks were stove or lost, and that he was compelled to bear away from his true line of navigation, and go in pursuit of the blockading squadron off the Carolina coast, for relief, under the necessity so incurred. He also avers that he bore up for that squadron, with the intent to speak them, as soon as they were discovered by him. Neither of the other two witnesses speak of such necessity having occurred, or states that the vessel had been put off her true course; and one of them asserts that the prize continued her way, under the pursuit of the United States ship-of-war, until the chase ended by her capture.

The case appears to me to be one of a manifest attempt by the master of the prize, under falsified papers and representations touching his voyage from Nassau, to run the blockade of Wilmington, N. C., he well knowing that the port was in a state of efficient blockade. A decree of condemnation and forfeiture against both vessel and cargo must be entered.

The counsel for the claimant, in his brief of argument, solicited leave to have a rehearing, upon further proofs, in this case. The impression of the court is, that the evidence upon the first hearing is so decidedly against the defence attempted to be established as to afford no reasonable ground for opening the case, to allow a new issue and a hearing on further proofs.